## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ROBERT FRANCIS QUINN,      )
                           )
      Plaintiff,           )
                           )
vs.                        )      Case No. CIV-05-396 R
                           )
UNIVERSITY OF OKLAHOMA,     )
                           )
      Defendant.           )

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

---

**RESPECTFULLY SUBMITTED THIS  15th DAY OF SEPTEMBER, 2006.**

Submitted By:

JOSEPH HARROZ, JR. , OBA # 15556
JASON D. LEONARD, OBA # 17664
SHAWNAE E. ROBEY, OBA # 19195
660 PARRINGTON OVAL, ROOM  213
NORMAN, OK 73109
(405) 325-4124          TELEPHONE
(405) 325-7681          FACSIMILE

COUNSEL FOR DEFENDANT

## TABLE OF CONTENTS

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**INDEX OF EXHIBITS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

**I.    STATEMENT OF UNDISPUTED FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    **A.    The University's Mission Statement and Graduate College Goal** . . . . . . . . . . 1

    **B.    Plaintiff's Medical Condition** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **C.    Plaintiff's Education** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    **D.    Plaintiff's Employment and Subsequent Requests for Extensions** . . . . . . . . 5

    **E.    Plaintiff's Dissertation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    **F.    Plaintiff's Claim of Disability Discrimination** . . . . . . . . . . . . . . . . . . . 7

**II.    ARGUMENT AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    **A.    Summary Judgment Standard** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    **B.    Plaintiff Failed to File this Action Within the Applicable Statute of Limitations** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    **C.    Plaintiff Cannot Establish His Prima Facie Case of Disability Discrimination Under Title II of the Americans with Disabilities Act** . . . . . . 9

    **D.    Plaintiff's Only Remedy Under Title II of the Americans with Disabilities Act is Reinstatement into the University's Graduate College** . . 17

**III.    CONCLUSION AND REQUEST FOR RELIEF** . . . . . . . . . . . . . . . . . . . . . . 18

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## <u>TABLE OF AUTHORITIES</u>

**<u>UNITED STATES SUPREME COURT CASES:</u>**

*Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143 (1987) ................ 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................ 8

*Bragdon v. Abbott*, 524 U.S. 624 (1998) .............................................. 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................ 8

*Murphy v. United Parcel Serv.*, 527 U.S. 516 (1999) .................................. 12

*Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214 (1985) .......................... 17

*Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999) ................................. 11

**<u>COURT OF APPEALS CASES:</u>**

*Applied Genetics Int'l, Inc. v. First Affiliated Secs, Inc.* 912 F.2d 1238 (10th Cir.1990) ....... 8

*Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628 (10th Cir.1993) .................... 9

*Cf. Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208 (2d Cir.2001) .............. 16

*Chenoweth v. Hillsborough County*, 250 F.3d 1328 (11th Cir.2001) ..................... 10

*Conaway v. Smith*, 853 F.2d 789 (10th Cir.1988) ..................................... 8

*Doherty v. Southern College of Optometry*, 862 F.2d 570 (6th Cir.1988) ................. 17

*E.E.O.C. v. W.H. Braum,* 347 F.3d 1192 (10th Cir. 2003) ............................... 8

*Everett v. Cobb County School Dist.*, 138 F.3d 1407 (11th Cir.1998) .................... 9

*Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998) ............................ 17

*Garcia v. Wilson*, 731 F.2d 640 (10th Cir.1984) ....................................... 9

*Heilweil v. Mt. Sinai Hosp.*, 32 F.3d 718 (2d Cir.1994) ............................... 14

*Henrietta D. v. Bloomberg,* 331 F.3d 261 (2nd Cir. 2003) ......................... 15, 16

*Holmes v. Texas A&M University*, 145 F.3d 681 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Industrial Const. Corp. v. Bureau of Reclamation*, 15 F.3d 963 (10th Cir.1994) . . . . . . . . . . . . 8

*Jones v. City of Monroe*, 341 F.3d 474 (6th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jones v. Smith*, 2004 WL 2053280 (10th Cir. Sept. 13, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McGuinness v. University of New Mexico Sch. of Medicine*,
    170 F.3d 974 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Powell v. National Board of Medical Examiners*, 364 F.3d 79 (2d Cir. 2004) . . . . . 12, 14, 16, 17

*Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547 (7th Cir.1996) . . . . . . . . . . . . . . . . . . . . . 9

*Sutton v. United Air Lines*, 130 F.3d 893 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Welsh v. City of Tulsa*, 977 F.2d 1415 (10th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Zukle v. Regents of the Univ. of California*, 166 F.3d 1041 (9th Cir. 1999) . . . . . . . . . . . . . . . . 9

**DISTRICT COURT CASES**:

*Smith v. City of Philadelphia*, 345 F.Supp.2d 482 (E.D.Pa.2004) . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES**:

Fed.R Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 12102(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

42 U.S.C. § 12131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

42 U.S.C. § 12132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C. § 12111(10)(A) & (B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**OTHER AUTHORITY**:

28 C.F.R. § 35.130(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 C.F.R. § 41.53 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 C.F.R. § 1630.2(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 C.F.R. § 1630.2(j)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## <u>INDEX OF EXHIBITS</u>

Exhibit 1, University Mission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Exhibit 2, Graduate College Goal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Exhibit 3, Graduate College Bulletin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Exhibit 4, Williams Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

Exhibit 5, January 29, 2003 email . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

Exhibit 6, Transcript of Quinn . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 5, 6, 7

Exhibit 7, June 21, 2006 Medical Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Exhibit 8, Plaintiff's Response to Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

Exhibit 9, Permanent Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Exhibit 10, April 12, 1991 letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Exhibit 11, Joint Status Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

Exhibit 12, December 15, 1997 letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Exhibit 13, December 4, 1998 letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Exhibit 14, January 20, 2000 email . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Exhibit 15, December 8, 2000 email . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Exhibit 16, December 21, 2001 letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Exhibit 17, February 28, 2003 letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, WITH BRIEF IN SUPPORT

**COMES NOW**, the State of Oklahoma ex rel. the Board of Regents of the University of Oklahoma (the "University") and respectfully moves this Court to enter summary judgment pursuant to Fed.R.Civ.P. 56 in its favor and against Robert Quinn ("Plaintiff").

## I. STATEMENT OF UNDISPUTED FACTS

### A. The University's Mission Statement and Graduate College Goal

1.      The University's mission is to provide the best possible educational experience for its students through excellence in teaching, research and creative activity, and service to the state and society. Ex 1, University Mission. The goal of the University's Graduate College is to provide leadership and service and to enhance the quality of graduate education and research/creative activity. Ex 2, Graduate College Goal.

2.      The time limits for Program Completion are outlined in the Graduate College Bulletin. A doctoral student who enters the University of Oklahoma graduate program with a master's degree is expected to pass the general examination within four calendar years of the student's first enrollment in a post-master's course used toward a doctoral degree. A doctoral candidate is normally expected to complete all degree requirements, including the written dissertation and its defense, within five years after passing the General Examination. Ex 3, Graduate College Bulletin, p. 58.

3.      The principle is that the candidate demonstrates the ability to conduct and complete a substantive scholarly work within a reasonable period of time. This is both a practical limitation in that the University doesn't have the faculty resources to work forever with an individual student, but more importantly the principle is related to the always evolving body of knowledge in a field.

-1-

At the time of awarding a doctoral degree, the candidate is required to be fully versed with the body of knowledge in his or her field, normally obtained through formal study with the faculty in graduate level courses prior to advancing to candidacy, and by sustained activity, and progress on the dissertation research. The academy has denoted a five year period as being a reasonable measure of the currency of knowledge and that beyond five years, the University cannot assume the knowledge is still current. Indeed, in a separate regulation the University deems that any course over five years-old is "overage" and the University limits how many such overage courses can be extant at the time the student sits his/her general examination and advances to candidacy. So, the five-year rule applies both to the latency of knowledge in a course and the period the University allows for completion of the dissertation after the student advances to candidacy. Ex 4, Williams' Affidavit. Plaintiff actually concedes the purpose of the principle in his January 29, 2003 email when he states that his research might be "dated". Ex 5, January 29, 2003 email, p. 4.

## B. Plaintiff's Medical Condition

4.      Plaintiff has alleged that in 1970, he was performing a deep-breathing yoga exercise when he fell on his head as a result of getting dizzy. As a result of the fall, Plaintiff felt an explosion in his inner ear. Plaintiff claims he felt excruciating pain on the entire left side of his face that caused him to throw up. The pain lasted for approximately two (2) to three (3) hours. Plaintiff went to the Delhi Hospital Emergency Room, was diagnosed with a soft tissue injury and was released. Approximately two (2) to three (3) hours later, Plaintiff experienced the same pain again in the left side of his face. Ex 6, Tr Plaintiff, 29:7-33:20.

5.      Every day since the date of Plaintiff's alleged injury in 1970, Plaintiff allegedly has had these episodes of pain four (4) to five (5) times per day. According to Plaintiff, each episode

used to last approximately one (1) to two (2) hours and the episode of pain would totally incapacitate Plaintiff when it occurred. Ex 6, Tr Plaintiff, 29:7-32:11; 44:25-46:18. Even with the episodes of pain as described by Plaintiff, he has been able to care for himself, cook for himself and bathe himself, among other daily major life activities. When asked if there is anything that Plaintiff cannot do as a result of his alleged disability, he only stated that he cannot do anything that requires his presence for more than two (2) to three (3) hours at a stretch. Ex 6, Tr Plaintiff, 47:19-48:18.

6.      According to Plaintiff, his doctors have diagnosed his condition as either cluster headaches or some form of vascular disease. Ex 6, Tr Plaintiff, 26:2-11; 44:25-46:1; 48:22-49:19.

7.      Since Plaintiff's visit to the Delhi Hospital Emergency Room in 1970 until Plaintiff began treating with Dr. Rodney Meyers in approximately 1989, Plaintiff received sporadic medical treatment, or in some cases no treatment at all, for his condition. After treating with Dr. Meyers for approximately six (6) to eight (8) months, Plaintiff's medical condition allegedly improved in that the length of time and intensity of such episodes decreased. Such episodes now allegedly last 30 minutes to one (1) hour at a time. Plaintiff currently treats with Dr. Meyers on an annual basis for blood work and to refill his prescriptions which, in Plaintiff's words, "finally got [his medical condition] under control." Ex 6, Tr Plaintiff, 24:21-25:4; 26:12-29:1; 34:10-36:5; 53:15-54:4; 141:9-13; 199:24-202:25; 206:7-208:1; 209:13-15; Ex 7, June 21, 2006 Medical Report.

8.      Plaintiff has smoked cigarettes for approximately forty (40) years. Plaintiff currently smokes a little less than a pack and a half of cigarettes per day. Dr. Meyers has recommended Plaintiff stop smoking on at least two (2) or three (3) occasions. Plaintiff has also seen literature that states that smoking exacerbates cluster headaches, yet he continues to smoke because of the enjoyment he receives from smoking and because he is addicted. Ex 6, Tr Plaintiff, 10:16-22; 34:3-

9; 50:7-10; 56:25-58:20; 59:21-61:13; 211:4-22.

9.      Plaintiff states that with his medical condition, the only employment position that he can occupy is a college level professor; therefore, Plaintiff has not applied for any other jobs. The last time Plaintiff worked was in 2001. Ex 6, Tr Plaintiff, 18:22-21:13; 76:18-79:9; 141:18-143:17; 213:25-214:8.

10.     Plaintiff applied for and received Medicaid within a few years of his injury. Plaintiff also received Supplemental Security Income for a period of time prior to being switched to Social Security Income in the early 1990s. Currently, Plaintiff receives $438.00 per month from Social Security and $123.00 per month from Supplemental Security Income. Plaintiff also receives $28.00 per month as a State Supplement. If Plaintiff earns wages over the Social Security limit, he is required to pay back monies to Social Security. Ex 6, Tr Plaintiff, 36:15-44:1; 218:8-14; Ex 8, Plaintiff's Response to Discovery, Interrogatory No. 1.

11.     Plaintiff did not have any episodes related to his medical condition during either the first portion of Plaintiff's deposition (from 1:36 p.m. to approximately 5:43 p.m.) or during the second portion of Plaintiff's deposition (from 1:30 p.m. to 3:10 p.m.). Ex 6, Tr Plaintiff, 5:1-4; 167:9-168:13; 176:11; 253:20-254:3.

### C.  Plaintiff's Education

12.     In approximately 1985, Plaintiff entered Oklahoma State University ("OSU") as a student to work on his bachelor's degree. Plaintiff completed his degree in liberal studies in approximately 1987 or 1988. During that time period, Plaintiff allegedly did not request, or need, any accommodation for his condition. Plaintiff stated that the reason he did not need an accommodation was because he had student loans available; therefore, he was able to devote full

time to his course work.  The Plaintiff restated the same reasoning in the Joint Status Report, i.e. "Had my student loans continued throughout the dissertation phase of my program, I would have completed my dissertation in the same timely manner that I completed my coursework."  Plaintiff was apparently not employed while completing his course work at OSU.  Ex 6, Tr Plaintiff, 81:6-82:20; 85:17-20; 111:6-12; Ex 11, Joint Status Report, p. 7.

13.    In approximately 1987, Plaintiff entered into a master's program at OSU in Philosophy.  Plaintiff completed the program within two (2) years and did not request any extensions.  Again, Plaintiff had student loans available and, therefore, was not employed during that time period.  Ex 6, Tr Plaintiff, 86:16-87:11; 111:13-15.

14.    In approximately 1989, Plaintiff entered into a doctorate program at the University of Oklahoma.  By 1993, Plaintiff had completed all requirements of the doctorate program except for his dissertation.  Plaintiff began the dissertation phase of the doctorate program in approximately January 1993.  The time period prescribed by the University for completion of a student's dissertation is five (5) years. Ex 6, Tr Plaintiff, 82:12-20; 85:17-86:15; 87:12-92:10; 93:2-4; 111:24-112:2; Ex 9, Permanent Record; Ex 10, April 12, 1991 letter.

### D.  Plaintiff's Employment and Subsequent Requests for Extensions

15.    While Plaintiff was attempting to complete his dissertation, Plaintiff voluntarily obtained employment teaching at Central State University ("CSU").  Plaintiff did not request, or need, any accommodations for his alleged condition to assist him in teaching at CSU.  Plaintiff conceded that it was his choice to teach rather than devote all of his available time to completing his dissertation.  As a result of Plaintiff's employment at CSU, Plaintiff was unable to devote his free time to his dissertation and, therefore, did not complete his dissertation within the five (5) years

provided by the University.  Ex 6, Tr Plaintiff, 85:17-86:15; 87:12-90:6; 214:9-217:15; Ex 11, Joint Status Report, p. 7.

16.    Plaintiff requested, and was granted, five (5) additional one (1) year extensions by the University in order to allow Plaintiff time to complete his dissertation.  It was noted to Plaintiff in his December 21, 2001 letter that no additional extensions would be given.  Ex 6, Tr Plaintiff, 112:18-117:11; Ex 12, December 15, 1997 letter; Ex 13, December 4, 1998 letter; Ex 14, January 20, 2000 email; Ex 15, December 8, 2000 email; Ex 16, December 21, 2001 letter.

17.    After Plaintiff's fifth one (1) year extension, Plaintiff was asked to end his employment and devote his full time and attention to his dissertation.  As a result, Plaintiff admittedly completed more work on his dissertation than any other year, yet still did not complete his dissertation.  Ex 6, Tr Plaintiff, 107:21-110:11; 112:3-17.

18.    In 2003, Plaintiff requested a sixth one (1) year extension that was denied by Dean T.H. Williams.  Dean Williams sent Plaintiff a letter on February 28, 2003, advising Plaintiff of his decision to remove Plaintiff from the Graduate College, and wishing Plaintiff well in his future endeavors.  Dean Williams denied Plaintiff's sixth request for a one (1) year extension because of Plaintiff's complete lack of progress towards completing his dissertation.  Ex 4, Williams affidavit; Ex 6, Tr Plaintiff, 112:18-21; Ex 17, February 28, 2003 letter.

19.    Plaintiff alleged that had he not lost his student-loan funding, which caused him to have to obtain employment, he thinks he would have completed his dissertation within the time period prescribed by the University.  Ex 6, Tr Plaintiff, 82:12-20.

### E.  Plaintiff's Dissertation

20.    According to Plaintiff, around the beginning of 1998, he had allegedly completed 200

pages towards his dissertation. Plaintiff stated initially that his dissertation was in handwritten form at his apartment. However, Plaintiff also stated that of the 200 pages, approximately 70 to 80 pages are on his computer. Since 1998, Plaintiff is unaware of how many pages he has added to his dissertation though he testified that he writes on the same everyday. However, when pressed regarding the actual writing on the dissertation, Plaintiff stated that he keeps notes of events that he intends to add to his dissertation, but has not actually added the information to his dissertation. When asked for a copy of the dissertation both in Plaintiff's deposition and by Defendant's Request for Production, Plaintiff denied the University's request. Ex 6, Tr Plaintiff, 97:1-106:25; 223:8-228:24; Ex 5, January 23, 2003 email; Ex 8, Plaintiff's Response to Discovery, Request No. 3. Therefore, it is not clear how much work Plaintiff has done on his dissertation.

### F. Plaintiff's Claim of Disability Discrimination

21.     Dean Williams is the individual at the University that Plaintiff claims discriminated against him by removing him from the Graduate College. Significantly, however, Plaintiff admits that Dean Williams did not remove Plaintiff from the Graduate College *because of* Plaintiff's alleged disability. Rather, Plaintiff claims that Dean Williams did not give the proper weight to Plaintiff's alleged disability when making the determination to remove Plaintiff from the Graduate College. Ex 6, Tr Plaintiff, 243:9-244:23; 249:24-250:24; Ex 11, Joint Status Report, p. 2 & 4.

## II.  ARGUMENT AND AUTHORITIES

### A.    SUMMARY JUDGMENT STANDARD

The University is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R Civ.P. 56(c). A factual dispute is "material" only if it

"might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets the burden, the burden shifts to the non-moving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The non-moving party may not rest on its pleadings, but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241. Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *See Anderson*, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## B.    PLAINTIFF FAILED TO FILE THIS ACTION WITHIN THE APPLICABLE STATUTE OF LIMITATIONS.

On February 28, 2003, Plaintiff was notified by letter from the University that Plaintiff was being dismissed from the Graduate School. It was not until April 8, 2005, that Plaintiff filed the instant action. In *E.E.O.C. v. W.H. Braum*, 347 F.3d 1192 (10th Cir. 2003), the Tenth Circuit explained that:

> [w]here Congress creates a cause of action without specifying the time period within which it may be brought, courts may infer that Congress intended the most analogous state statute of limitations to apply. *See Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 146-47, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); *Industrial Const. Corp. v. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir.1994) ("Where Congress has not enacted an express statute of limitations for a particular cause of action, federal courts generally borrow and apply the most analogous state statute of limitations, unless to do so would be inconsistent with federal law."). We

have applied state statutes of limitations in 42 U.S.C. § 1983 claims, *Garcia v. Wilson*, 731 F.2d 640-42 (10th Cir.1984), and in claims under the Rehabilitation Act, *Baker v. Bd. of Regents of State of Kan.* , 991 F.2d 628, 631-32 (10th Cir.1993). Other circuits have applied state statutes of limitations to claims brought under Titles II and III of the ADA. *See Everett v. Cobb County School Dist.*, 138 F.3d 1407, 1409 (11th Cir.1998) (applying Georgia's two-year state statute of limitations for personal injury actions to Title II claim); *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 (7th Cir.1996) (applying Illinois' two-year state statute of limitations to Title III claim).

*See also Holmes v. Texas A&M University*, 145 F.3d 681, 683-84 (5th Cir. 1998)(applying two-year personal injury statute to Title II ADA claim); *Smith v. City of Philadelphia*, 345 F.Supp.2d 482 (E.D.Pa.2004) (claims under Title II of the ADA are governed by the state statute of limitations for personal injury claims). As such, Plaintiff only had two (2) years to file the instant case. Plaintiff filed this case beyond that time period and, therefore, his case should be dismissed. Undisputed Fact ("UDF") No. 18.

## C.   PLAINTIFF CANNOT ESTABLISH HIS PRIMA FACIE CASE OF DISABILITY DISCRIMINATION UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT.

In order to establish his claim of discrimination under Title II of the ADA, Plaintiff must prove that (1) he has a disability; (2) he is otherwise qualified to remain a student, meaning that he can meet the essential eligibility requirements of the school with or without reasonable accommodation; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir.2003); *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999). Plaintiff cannot establish any of the three (3) elements of his prima facie

case.[1]

First, Plaintiff cannot establish that he suffers from a disability within the meaning of Title II of the ADA. Section 12131 defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131. A disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). In turn, "major life activities" are defined as including ''functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329 (11th Cir.2001) (quoting ADA regulations in 29 C.F.R. § 1630.2(I)). The plain meaning of the word "major" requires that the activity be significant, in order to be covered by the ADA. *See Bragdon v. Abbott*, 524 U.S. 624, (1998).

Here, Plaintiff claims that he suffers from an undiagnosed medical condition that *might* qualify as cluster headaches or as some form of vascular disease. Significantly, his condition does not impair his ability to care for himself, cook for himself, bathe himself, or work, among other daily major life activities. Plaintiff failed to identify any specific major life activity that substantially limits Plaintiff in any daily activity. UDF Nos. 5 & 7. According to the EEOC regulations

---

[1]Though Plaintiff has not asserted a claim under the Rehabilitation Act, Defendant asserts that had Plaintiff done so, Defendant's ADA Title II analysis set forth herein would be identical to that presented in response to a claim under the Rehabilitation Act and such claim (if it had been presented) would be equally without merit.

interpreting the ADA, the term substantially limits means: "(i)Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). When asked is there is anything that Plaintiff cannot do as a result of his alleged disability, he only stated that his condition had caused him to be unable to do anything that required his presence for more than two (2) to three (3) hours at a time. UDF Nos. 5 & 7. Plaintiff alleged that his episodes of pain last approximately 30 minutes to one (1) hour. At the end of that time period, Plaintiff would be able to return to the activity in question. Such restriction, to the extent it actually exists, does not qualify Plaintiff's episodes of pain as a disability within the meaning of the ADA as there is no substantial limitation placed upon Plaintiff in any specified major life activity. UDF Nos. 5 & 7.

Further, Plaintiff testified that his condition has improved over time. Plaintiff testified that his medications have finally gotten his medical condition "under control." UDF No. 7. This is obviously the case as Plaintiff did not have any episodes during his two (2) lengthy depositions in this case. UDF No. 11. When determining if Plaintiff suffers a substantial limitation, the Court must consider any corrective measures that Plaintiff has employed. *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999) ("Looking at the Act as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative-must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act."). If the corrective measures sufficiently alleviate Plaintiff's impairment, then Plaintiff is not disabled under the ADA, because

the impairment does not rise to a substantial limitation. *Id.* at 482-83. For example, if a plaintiff suffers from high blood pressure and takes medication which relieves the high blood pressure to the extent that the plaintiff no longer suffers a substantial limitation, the plaintiff is not disabled within in the meaning of the ADA. *See Murphy v. United Parcel Serv.*, 527 U.S. 516, 521-22 (1999).

In a strikingly similar case, *Powell v. National Board of Medical Examiners*, 364 F.3d 79 (2d Cir. 2004), the plaintiff sued the National Board of Medical Examiners (the "Board") and the University of Connecticut ("UConn") where she had been attending medical school. The plaintiff argued that she was dismissed from the medical school after two (2) years due to her disability, i.e., dyslexia. The plaintiff finished two (2) years of medical school and, pursuant to UConn's requirements, the plaintiff was then required to pass the first phase of the medical board examination. The plaintiff could not pass the exam despite three (3) attempts and was, therefore, dismissed from UConn's medical school. The plaintiff made a request for an accommodation from the Board in the form of additional time to complete the exam. She also asked UConn to allow her to stay in the medical program despite her failed attempts to pass the exam. Her requests were denied. The defendants filed motions for summary judgment which were granted and affirmed on appeal.

In determining whether the plaintiff was disabled within the meaning of Title II, the Second Circuit explained that she did not demonstrate that she was a qualified individual with a disability and looked to the plaintiff's academic record in making such determination. The plaintiff had the ability to graduate from high school and college and to obtain admission to the medical school based on her academic record. Similarly, here, Plaintiff has been able to graduate from high school and obtain a Bachelor's degree and a Master's degree. Any medical condition from which Plaintiff may suffer has certainly not impaired his ability to be successful in obtaining these degrees over the years.

-12-

"[I]t is the actual effect on the individual's life that is important in determining whether an individual is disabled under the ADA." *Sutton v. United Air Lines*, 130 F.3d 893, 902 (10th Cir. 1997). For the purposes of the ADA, inability to pursue one's career does not constitute a severe impact on an individual's life. *See, e.g., Welsh v. City of Tulsa*, 977 F.2d 1415, 1419 (10th Cir.1992) (holding that plaintiff was not disabled under the Rehabilitation Act, which defines "disability" the same way as the ADA, merely because he could not be a firefighter).

And, the fact that Plaintiff can take certain steps to mitigate the impact of his medical condition is important to this analysis. It was not until Plaintiff took on a job outside of the University that he claimed he was unable to devote full time and attention to completing his dissertation. He claimed that his outside employment interfered within his efforts to complete his dissertation, but that when he was not employed, he did not have any problems with his efforts. UDF No. 15. As explained by the Court in *McGuinness v. University of New Mexico Sch. of Medicine*, 170 F.3d 974, 978-79 (10th Cir. 1998) mitigation is important:

> Mr. McGuinness admits that, in the past, he has been able to mitigate his anxiety in chemistry and math by altering his study habits. Under the law of this circuit, we must consider the plaintiff's ability to mitigate his impairment in determining if that impairment substantially limits a major life activity. *See Sutton*, 130 F.3d at 902-3. Just as eyeglasses correct impaired vision, so that it does not constitute a disability under the ADA, an adjusted study regimen can mitigate the effects of test anxiety. *See id.* at 903.

In addition, Plaintiff cannot establish that he is otherwise qualified for the Graduate School program at the University. The requirements of the Graduate School dictate that a student complete his dissertation within a period of five (5) years. Plaintiff could not meet this essential requirement applicable to all students in the Graduate School. And, even when he was provided an additional five (5) years to complete his dissertation, Plaintiff still could not meet this requirement of the

-13-

program and conceded that his failure to complete the dissertation within these ten (10) years had nothing to do with his medical condition, but was based on the fact that his work outside of the University was interfering with his concentration on the dissertation.  UDF Nos. 15-19.

Again, the court's decision in *Powell* is instructive.  In finding that the plaintiff was not otherwise qualified to continue to be a medical student at UConn, the Court explored the plaintiff's educational background, noting that she had maintained a B average in high school and was on the honor roll.

> Further, the record reveals that despite long hours of study and much assistance from family members and members of the educational community, appellant was an average student for her entire educational life. The average to low-average results of an I.Q. examination led her own neuropsychologist, Dr. Deckel, to conclude that she would be likely to encounter difficulties in her advanced post-secondary courses such as those given in medical school. Powell's 3.16 undergraduate grade point average (GPA) was significantly below the average 3.45 GPA of an incoming medical student in her class, and her composite MCAT score of 20 was significantly lower than those of her colleagues of 28.4 as well. These facts suggest that she did not meet the essential eligibility requirements for participation in this medical school program. *See* 42 U.S.C. § 12131(2).
>
> Plaintiff presented no additional proof to show that in fact she met those requirements and, in her own words, described the difficulties she experiences with basic memory function, vision, and reading comprehension in general. Thus, she failed to carry her burden to demonstrate she was otherwise qualified, as she needed to in order to establish her *prima facie* case and move forward to trial. *See Heilweil v. Mt. Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir.1994).

*Powell*, 364 F.3d at 87.

The same is true here.  Plaintiff did nothing more than describe his undiagnosed medical condition in general.  He fails to meet the definition of disabled within the meaning of Title II and was not otherwise qualified for the program.

Furthermore, Plaintiff cannot establish that he has been dismissed from the Graduate School "solely because of his disability."  Rather, the evidence is clear that Plaintiff's opportunity to

-14-

continue in the Graduate School was discontinued due to his repeated inability to complete the necessary requirements of the program despite five year-long extensions beyond the five-year period required by all other participants.  Of particular importance is Plaintiff's admission that he was not dismissed from the program "because of" his disability.  UDF No. 22.  Hence, even by Plaintiff's own admission, he was not dismissed from the program because of his disability and he has no evidence of the same.  Plaintiff's opportunity was discontinued when he repeatedly failed to complete his dissertation, which by Plaintiff's own account was not due to his disability, but due to his outside employment distracting him from completion of his dissertation.  It is not the University's fault that Plaintiff's financial aid was discontinued and that Plaintiff sought employment outside the University due to that fact.

In ***Jones v. Smith***, 2004 WL 2053280, *3 (10th Cir. Sept. 13, 2004), the Tenth Circuit found that the plaintiff

> failed to state a claim [] because he does not claim that his job assignment to medically inappropriate work was done *because of his disability*. Rather, his complaint simply states that Defendants assigned him to work that he was physically unable to perform. It does not provide facts to support discrimination, nor does it even state that the allegedly improper job assignment was made because of his disability.  This assignment could have been the result of incompetence or personal spite or any other number of reasons, according to Plaintiff's complaint. Plaintiff has thus failed to state a disability discrimination claim under the ADA or RA.

Similarly, in ***Henrietta D. v. Bloomberg***, 331 F.3d 261, 276 (2nd Cir. 2003) (quoting 42 U.S.C. § 12132), the Second Circuit noted that under the ADA "there must be something different about the way the plaintiff is treated 'by reason of . . .disability.'"  The Second Circuit found that the plaintiff had not been treated differently from non-disabled individuals or denied any benefit because of an alleged disability.

-15-

In *Powell*, the Court found that the plaintiff could not establish that her dismissal from medical school was based on her disability or that it would be reasonable for the university to accommodate her by allowing her to continue in the program despite her repeated failed efforts to pass the exam.

> [E]ven if plaintiff proved she was otherwise qualified to be a medical student and to take Step I, she produced no proof that she was discriminated against under the Acts on account of her alleged disability, by either UConn or the National Board. On the contrary, nothing suggests that UConn did anything other than support Powell in her efforts to succeed in its medical program. * * *
>
> A defendant is not required to offer an accommodation that imposes an undue hardship on its program's operation; it is only required to make a reasonable accommodation. 28 C.F.R. § 41.53 (2002). The ADA defines undue hardship as one requiring significant difficulties or expense when considered in light of a number of factors, one factor being the type of service or product being offered. *Cf. Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 221 (2d Cir.2001) (defendant employer failed as a matter of law to show that accommodation to plaintiff employee would cause it undue hardship) (citing 42 U.S.C. § 12111(10)(A) & (B)). In addition, a defendant need not make an accommodation at all if the requested accommodation "would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *Henrietta D.*, 331 F.3d at 281.
>
> It was well within UConn's authority to decide that in order for it to adhere to the demanding standards of a medical school responsible for producing competent physicians, it needed to require plaintiff to pass Step I. The accommodation requested by plaintiff, that she be allowed to continue in the program without first passing Step I, would have changed the nature and substance of UConn's program. Other underperforming students were required to prove their mastery of this knowledge before being allowed to advance. * * *
>
> Plaintiff failed to produce evidence to create an issue of fact with respect to whether UConn's decision was made on a discriminatory basis. Her failure to present such proof, accordingly, entitled defendants to an award of summary judgment dismissing her complaint.

*Powell*, 364 F.3d at 87-88.

Here, too, the University bent over backwards for Plaintiff in granting him five one-year extensions for a total of ten (10) years to complete his dissertation. The question becomes how much is enough? At what point can the University dismiss Plaintiff from the program based on his

-16-

complete inability to complete his dissertation and say to Plaintiff "enough is enough"? The University has done everything possible to allow Plaintiff additional time to complete his dissertation. Any further extensions would not be reasonable, would create an undue hardship on the University and would result in the University credentialing the Plaintiff a Ph.D. without the mastery of current material. Any further extensions would have changed the nature and substance of the University's program.[2] As pointed out by the Court in *Powell*, "[o]ther underperforming students were required to prove their mastery of this knowledge before being allowed to advance." So too should Plaintiff be required to complete his dissertation within double the amount of time given to all other students.

Plaintiff cannot prove that his dismissal from the Graduate School was solely due to his disability. In fact, Plaintiff has no evidence that it had anything to do with his medical condition at all. As such, Plaintiff's claim must fail as a matter of law.

**D.    PLAINTIFF'S ONLY REMEDY UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT IS REINSTATEMENT INTO THE UNIVERSITY'S GRADUATE COLLEGE.**

Assuming *arguendo* that Plaintiff was able to establish a violation of Title II of the ADA, his only remedy is reinstatement. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998) (finding that compensatory damages available only upon showing of intentional discrimination).

---

[2]Educational institutions are accorded deference with regard to the level of competency needed for an academic degree. *McGuinness*, 170 F.3d at 979. As set forth above, "[w]hen reviewing the substance of a genuinely academic decision, courts should accord the faculty's professional judgment great deference. *See Regents of Univ. of Michigan v. Ewing*, 474 U.S. at 225. *See also Doherty v. Southern College of Optometry*, 862 F.2d 570, 575 (6th Cir.1988)(discussing reasonable accommodations under the Rehabilitation Act and holding that an education institution is not required to waive a course requirement deemed reasonably necessary for the conferral of an academic degree).

Plaintiff failed to make any allegation of intentional discrimination in his Complaint, and no such intentional discrimination can be shown in this case. As admitted by Plaintiff, he did not believe that the actions taken against him were based on his disability. Rather, Plaintiff alleged that the University did not give his medical condition due weight when it dismissed him from the program after five 1-year extensions to complete his dissertation. Having failed to allege or prove intentional discrimination on the part of the University, Plaintiff is limited in his recovery, to the extent any recovery is appropriate, to equitable relief.

### III. CONCLUSION AND REQUEST FOR RELIEF

In light of the foregoing, the Court should enter judgment in favor of the University.

Respectfully submitted,

s/Jason D. Leonard
Joseph Harroz, Jr., OBA #15556
Jason D. Leonard, OBA#17664
Shawnae E. Robey, OBA #19195
660 Parrington Oval, Room 213
Norman, Oklahoma 73109
Telephone: (405) 325-4124
Facsimile: (405) 325-7681
jharroz@ou.edu
leonardjd@ou.edu
Attorneys for Defendant

-18-

## CERTIFICATE OF SERVICE

I hereby certify that on the 15 [th] day of September, 2006, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant(s):

James L Bintz
816 B Cardinal Creek Blvd
Norman, OK 73072

Robert Francis Quinn
1901 E Lindsey St
Apt #22B
Norman, OK 73071

s/Jason D. Leonard _____