**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ROBERT FRANCIS QUINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-05-396 R |
| | ) | |
| UNIVERSITY OF OKLAHOMA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF ROBERT F. QUINN'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

COMES NOW Plaintiff Robert F. Quinn, who, pursuant to Fed. R. Civ. P. 56, hereby files this Motion for Summary Judgment and Brief in Support, and demonstrates to the Court as follows:

This case arises from Plaintiff Robert Quinn's enrollment as a doctoral graduate student in a program of study offered by Defendant State of Oklahoma, ex rel. the Board of Regents of the University of Oklahoma through the University of Oklahoma's Graduate College. In Fall 1992, Quinn passed the qualifying examination to proceed with the writing of his dissertation. Quinn then began researching and drafting his doctoral thesis in January 1993. Quinn was striving to earn a Ph.D. in Philosophy.

In Spring 2003, the University of Oklahoma dismissed Quinn from further participation in the doctoral program. Dean Williams of the Graduate College declared that Quinn had not made sufficient progress towards completion of his thesis, and thereby did not merit additional time to complete his work. Quinn has sued for disability discrimination.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. The Parties

1.)    The University of Oklahoma is an institution of higher education, and unified part of the Oklahoma State System of Higher Education,  which is the State of Oklahoma's constitutionally  created legal structure for providing public education at the collegiate level. (Ex. 1: Guide to State of Oklahoma System of Higher Education; August 2006, pg. 1).

2.)    The University of Oklahoma is governed by Defendant Board of Regents of the University of Oklahoma ("OU Regents") who control academic policy and administration, as well as budget administration, for  each institution. (Ex. 1: pgs. 1, 3).

3.)    The Oklahoma Legislature has assigned all authority to Defendant OU Regents to accept and disburse federal funds and grants on behalf of the University of Oklahoma.(Ex. 1: pg. 6).

4.)    Plaintiff Robert Quinn was admitted to the doctoral program in Philosophy at the University of Oklahoma in 1989, and completed coursework between 1989 and 1992. Quinn completed the requisite General Examination in Fall 1992. (Ex. 2: Aff. of Graduate College Dean; para. 4).

5.)    In Fall 1997, Fall 1998, Fall 1999, and Fall 2000, Quinn was granted one-year extensions to complete his  dissertation. He was granted an additional one-year extension in Fall 2001, at which time Dean Williams of  the Graduate College informed Quinn that this would be his last extension. (Ex. 2: Aff. of Graduate  College Dean; para. 4).

6.)     Quinn petitioned for an additional one-year extension in Fall 2002. Dean Williams denied that petition declaring Quinn had made insufficient progress toward completion of his dissertation. (Ex. 2: Aff. of Graduate College Dean; para. 4).

7.)     In Spring 2003, Dean Williams terminated Quinn's participation in the doctoral program, and removed him from further academic work within the Graduate College.  (Ex. 2: Aff. of Graduate College Dean; para. 5).

### B.  Defendant Has Accepted Federal Funds

8.)     During the fiscal year ending June 30, 2002, Defendant OU Regents accepted research funds for the University of Oklahoma's Norman Campus directly from the federal government which totaled in excess of $32 million. (Ex. 3: Audited Statement FY 2002 ; pg.4).

9.)     Likewise, during the fiscal year ending June 30, 2003, Defendant OU Regents accepted federal research funds for the University of Oklahoma's Norman Campus directly from the federal government which totaled in excess of $29 million. (Ex. 4: Audited Statement FY 2003; pg. 38).

## II.  ARGUMENT

### Defendant University Has Any Eleventh Amendment Immunity As To Liability Under Section 504 Of The Rehabilitation Act

Congress has conditioned a State's receipt of federal financial assistance upon its waiver of immunity as to private suits brought for enforcement of the nondiscrimination provisions prescribed under Section 504 of the Rehabilitation Act. Defendant Board of

Regents for the University of Oklahoma has accepted such federal funds, and thereby waived any immunity provided by the Eleventh Amendment against a private action under Section 504. Plaintiff Quinn therefore respectfully submits that summary judgment should be entered against Defendant Board of Regents holding that any affirmative defense of immunity as to liability under Section 504 has been waived.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, contains an "antidiscrimination mandate" that was enacted to "enlist[] all programs receiving federal funds" in Congress's attempt to eliminate discrimination against individuals with disabilities. *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 286 n.15, 277 (1987) (citing 29 U.S.C. 794). Congress found that "individuals with disabilities constitute one of the most disadvantaged groups in society," and that they "continually encounter various forms of discrimination in such critical areas as employment, housing, public accommodations, *education*, transportation, communication, recreation, institutionalization, health services, voting, and public services." 29 U.S.C. 701(a)(2) & (a)(5). (Emphasis added.)

In *Cannon v. University of Chicago*, 441 U.S. 677, 709 (1979), the Supreme Court held that Congress's use of language in Title IX, which is indistinguishable from that used in the Rehabilitation Act of 1973, was intended to create a private right of action. "Title IX was patterned after Title VI of the Civil Rights Act of 1964." *Cannon v. Univ. of Chicago*, 441 U.S. at 694 (citations omitted). Since *Cannon*, the Tenth Circuit has held that there is

a private right of action under the Rehabilitation Act. *Pushkin v. Regents of Univ. of Colorado*, 658 F.2d 1372, 1376-80 (10th Cir. 1981).

Moreover, 42 U.S.C. § 2000d-7, which is part of the Americans with Disabilities Act, provides that a "*State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973* [29 U.S.C. 794], title IX of the Education Amendments of 1972 * * * [and] title VI of the Civil Rights Act of 1964." (Emphasis added). The Supreme Court has held that Section 2000d-7 is a valid exercise of Congress's power under the Spending Clause to prescribe conditions for state agencies that voluntarily apply for and accept federal financial assistance. *See School Bd. of Nassau County*, 480 U.S. at 286, n.15.

The Court has reasoned that States are free to choose whether or not to waive their Eleventh Amendment immunity by accepting federal financial assistance. *See College Sav. Bank v. Florida Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). The Court has further held that a State's acceptance of such federal funds entails an agreement to the private actions allowed under Section 504. 527 U.S. at 686. In other words, Congress may, and has, conditioned the receipt of federal financial assistance on Defendant University's waiver of Eleventh Amendment immunity to Section 504 claims. *Id*.; *see also, Lane v. Peña*, 518 U.S. 187, 200 (1996) (acknowledging "the care with which Congress responded to our decision in Atascadero by crafting an unambiguous waiver of the States' Eleventh

Amendment immunity" in Section 2000d-7); *see*, *e.g.*, *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985).

The Tenth Circuit has thereby held that "by accepting federal financial assistance as specified in 42 U.S.C. § 2000d-7, states and state entities waive sovereign immunity from suit." *Robinson v. State of Kansas,* 295 F.3d 1183, 1186 - 88 (10th Cir. 2002) (citations omitted), *cert. denied*, 123 S.Ct. 2574 (2003); *see also*, *Koslow* v. *Pennsylvania* 302 F.3d 161, 170-172 (3d Cir. 2002) (footnote omitted) (finding that through enacting amendment to § 2000d-7, Congress put states on notice that by accepting federal funds under the Rehabilitation Act, they would waive their Eleventh Amendment immunity to Rehabilitation Act claims).

Here, Plaintiff Robert Quinn was admitted to the doctoral program in Philosophy at the University of Oklahoma in 1989, and completed coursework between 1989 and 1992. Quinn completed the requisite General Examination in Fall 1992. (Ex. 2: Aff. of Graduate College Dean; para. 4).

In Fall 1997, Fall 1998, Fall 1999, and Fall 2000, Quinn was granted one-year extensions to complete his  dissertation. He was granted a one-year extension in Fall 2001, at which time Dean Williams of  the Graduate College informed Quinn that no further extensions would be granted. (Ex. 2: para. 4).

Quinn petitioned for an  additional one-year extension in Fall 2002. Dean Williams denied that petition declaring Quinn had made insufficient progress toward completion of

his dissertation. (Ex. 2: para. 4). In Spring 2003, Dean Williams terminated Quinn's participation in the doctoral program, and dismissed him from further academic work within the Graduate College. (Ex. 2: para. 5).

During the fiscal year ending June 30, 2002, Defendant OU Regents accepted research funds for the University of Oklahoma's Norman Campus directly from the federal government which totaled in excess of $32 million. (Ex. 3: Audited Statement FY 2002 ; pg.4). Likewise, during the fiscal year ending June 30, 2003, Defendant OU Regents accepted federal research funds for the University of Oklahoma's Norman Campus directly from the federal government which totaled in excess of $29 million. (Ex. 4: Audited Statement FY 2003; pg. 38).

In other words, when Dean Williams determined in Fall 2001 not to allow Quinn time beyond 2002 for completion of his dissertation, Defendant Regents had accepted direct federal research funds totaling $32 million during the encompassing fiscal year. Similarly, when Dean Williams terminated Quinn's participation in the doctoral program, and dismissed him from further academic work within the Graduate College in Spring 2003, Defendant Regents had accepted direct federal research funds totaling $29 million during the encompassing fiscal year.

On April 8, 2005, Quinn filed his Complaint in this case averring that he had been wrongfully dismissed from the Graduate College at the University of Oklahoma, and that by refusing to allow additional time for completion of his dissertation, the University failed to accommodate a long-term and well-documented disability. [Doc. No. 1-1].

A federal statutory claim may be pled without citing a specific statute. *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1032 (5th Cir. 1993); *see Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 622 (1st Cir. 1988) (holding that legal theory of recovery need not be plead if issues are noticed). Defendant Regents have admitted at page 3 of the earlier filed Final Pretrial Report that a legal issue in this case is: "Whether the University discriminated against Plaintiff in violation of the Rehabilitation Act?". [Doc. No. 54]. Thus, Defendant Regents have admitted being on notice that a claim under the Rehabilitation Act exists under the facts plead in Plaintiff's Complaint.

The University of Oklahoma is an institution of higher education, and unified part the Oklahoma State System of Higher Education, which is the State of Oklahoma's constitutionally created legal structure for providing public education at the collegiate level. (Ex. 1: Guide to State of Oklahoma System of Higher Education; August 2006, pg. 1). The University of Oklahoma is governed by Defendant OU Regents who control academic policy and administration, as well as budget administration, for each institution. (Ex. 1: pgs. 1, 3). The Oklahoma Legislature has assigned all authority to Defendant OU Regents to accept and disburse federal funds. (Ex. 1: pg. 6).

Here, Defendant Regents accepted federal funds during the fiscal years in which Dean Williams engaged in acts which Plaintiff has alleged resulted in disability discrimination. Defendant Regents have recognized that Plaintiff has plead a cognizeable claim under the Rehabilitation Act.

The law is well established that a motion for summary judgment may be granted if sts no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 248 (1986); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that constitutes an element that is essential to a party's case. *Celotex v. Catrett*, 477 U.S. at 322-23. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." 477 U.S. at 248.

Here, the un-controverted evidence demonstrates that Defendant OU Regents have accepted federal funds, and thereby waived sovereign immunity as an affirmative defense in this case. Consequently, Plaintiff Quinn respectfully submits that summary judgment should be entered against Defendant Board of Regents holding that any affirmative defense of sovereign immunity as to liability under Section 504 of the Rehabilitation Act has been waived. Plaintiff moves the Court to so enter judgment.

Respectfully submitted,

s/ James L. Bintz
James L. Bintz
OBA No. 16394
*Attorney for Plaintiff*
James L. Bintz, Attorney-at-Law
816-B Cardinal Creek Blvd.
Norman, OK 73072
Telephone: (405) 321-9694
Fax: (405) 360-6394
jbintz.attorney@sbcglobal.net

## *Certificate of Service*

I hereby certify that on September 19, 2006, I electronically transmitted the attached

document to the Clerk of Court using the ECF filing system. Based on the records currently

on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF

registrants:

Joseph Harroz, Jr.
Jason D. Leonard
Shawnae E. Robey
Office of Legal Counsel
University of Oklahoma
660 Parrington Oval, Suite 213
Norman, Oklahoma 73019
Telephone: (405) 325-4124
Facsimile: (405) 325-7681
*Attorneys for Defendant*

s/ James L. Bintz