**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **ROBERT FRANCIS QUINN,**    )  <br>    )  <br>    **Plaintiff,**    )  <br>    )  <br>**vs.**    )  <br>    )  <br>**UNIVERSITY OF OKLAHOMA,**    )  <br>    )  <br>    **Defendant.**    )  | **Case No. CIV-05-396-R** |

# O R D E R

Before the Court are the Defendant's motion for summary judgment (Document No. 69), and the Plaintiff's motion for summary judgment (Document No. 72).

The Plaintiff, Robert Francis Quinn, brings suit against the Defendant, the State of Oklahoma ex rel. the Board of Regents of the University of Oklahoma, pursuant to the Americans with Disabilities Act, Title 42 U. S. C. §§ 12101, *et seq.* ("ADA"). In his motion for summary judgment, the Plaintiff asserts a claim under Section 504 of the Rehabilitation Act, Title 29 U. S. C. § 794.[1]

I. Summary of the Evidence.

The Plaintiff alleges that he suffered a head injury while doing yoga in 1970, and that he has suffered from what his doctor describes as "cluster headaches" since that time. The Plaintiff alleges that he has headaches four to five times per day, with each episode lasting one to two hours. The Plaintiff alleges that each headache episode is excruciatingly painful, and totally incapacitating

---

[1] The Defendant contends that the Plaintiff has not asserted a claim under the Rehabilitation Act, and urges the Court to deny any request by the Plaintiff to amend his complaint to assert a cause of action under the Rehabilitation Act. The parties agree, however, that the requirements for a claim under Section 504 of the Rehabilitation Act are the same as those applicable to the Plaintiff's ADA claim. (Defendant's brief in support of its motion for summary judgment, p. 10; Plaintiff's brief in response to Defendant's motion for summary judgment, p. 11). However, in light of the Court's findings with regard to the statute of limitations, the Court need not grant the Plaintiff leave to amend, as an amendment would be futile.

while it lasts.  (Deposition of Robert Francis Quinn, Tr. pp. 46 - 49).  The Plaintiff alleges that he loses six to eight hours of productive time each day to this condition.  (Quinn Deposition, Tr. pp. 110 - 111, 117).

In 1985, the Plaintiff entered Oklahoma State University as a student, where he earned a bachelor's degree in liberal studies in approximately three years, and a master's degree in philosophy in approximately two years.  The Plaintiff entered into a doctorate degree program at the University of Oklahoma in 1989, and completed his course work and passed the qualifying examination to begin writing his doctoral dissertation through the University of Oklahoma's Graduate College in 1992.  He began the dissertation phase of his degree program in the spring semester of 1993.  A doctoral candidate at the University of Oklahoma is normally expected to complete  his dissertation within five years.

While the Plaintiff was working on his dissertation, he obtained employment teaching at Central State University.  The Plaintiff requested, and was granted, five consecutive year long extensions by the University to complete his dissertation.  In a memo dated December 21, 2001, the University's Graduate Programs Representative advised the Department of Philosophy Committee Chair that the Plaintiff's request for an extension was granted, and that it would be the "final extension granted since Mr. Quinn has had 4 previous extensions to complete his doctoral degree." (Defendant's Exhibit No. 16).  After granting the Plaintiff's fifth one-year extension, university officials asked the Plaintiff to stop working so that he could complete his dissertation.  (Quinn Deposition, Tr. pp. 107 - 108).  The Plaintiff quit working, and accomplished more work on his dissertation than in any other year.  (Quinn Deposition, Tr. pp. 109 - 110).

In the fall of 2002, the Plaintiff requested a sixth one-year extension. This extension was denied in February 2003, but the Plaintiff contends that he did not receive notice of the denial of his extension until April 8, 2003. (Defendant's Exhibit No. 4).

## II. Statute of Limitations.

In its summary judgment, the Defendant argues that the Plaintiff's ADA claim is barred by the statute of limitations. The parties agree that the Plaintiff's ADA claim is governed by a two-year statute of limitations borrowed from Oklahoma's statute of limitations governing tort actions, Title 12 Okla. Stat. § 95. *See Wilson v. Garcia,* 471 U. S. 261, 266, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985) (In the absence of an explicit federal statute of limitations, a federal court should adopt the most analogous or most appropriate state statute of limitations); *Equal Employment Opportunity Commission v. W. H. Braum,* 347 F. 3d 1192 (10th Cir. 2003); *Allred v. Solaray, Inc.,* 971 F. Supp. 1394, 1397 (D. Utah 1997) (No explicit statute of limitations under the ADA); *Punahele v. United Air Lines, Inc.,* 743 F. Supp. 758, 759 (D. Colo. 1990) (No explicit statute of limitations under the ADA). Oklahoma's two year statute of limitations also applies to any claim the Plaintiff asserts under the Rehabilitation Act. *See Swenson v. Lincoln County School District No. 2,* 260 F. Supp. 2d 1136 (D. Wyo. 2003) (Statute of limitations for both ADA and Rehabilitation Act suits brought in Wyoming are governed by the state's limitation period for tort actions); *Larson v. Snow College,* 189 F. Supp. 2d 1286 (D. Utah 2000) (Utah statute of limitations applied to ADA and Rehabilitation Act claims).

The Defendant contends that the Plaintiff's limitation period began to run when he was notified by letter that he was being dismissed from the University's graduate school on February 28, 2003, more than two years before suit was filed on April 8, 2005. (Defendant's motion for summary

judgment, p. 8, Defendant's Exhibit No. 4). In this letter, Dean T. H. Lee Williams advised the Plaintiff that he "must regretfully decline" the Plaintiff's petition for an extension on his doctoral studies, and expresses regret that the Plaintiff was "not able to complete" his studies.

The Plaintiff initially submitted an affidavit which did not explicitly deny that he received Dean Williams' February 28, 2003 letter, but alleged that he "did not receive any notification from the University of Oklahoma nor Dean Williams prior to April 8, 2003" of the denial of his request for a sixth extension. (Affidavit of Plaintiff Robert F. Quinn dated October 10, 2006, Exhibit No. 1 to Plaintiff's motion for summary judgment). With his surreply brief, the Plaintiff has submitted a second affidavit, averring that when he first asked for his sixth extension, Dean Williams told the Plaintiff "that he was inclined to grant the extension," but that the Plaintiff first needed to communicate with Professor James Hawthorne. (Affidavit of Plaintiff Robert F. Quinn dated November 17, 2006, Exhibit No. 1 to Plaintiff's surreply brief). The Plaintiff explains, in his second affidavit, that he attempted to contact Professor Hawthorne, and learned that Professor Hawthorne was in Germany. (Plaintiff's November 17, 2006 affidavit).

The Plaintiff states in his second affidavit that during December 2002, his life partner, Vicki Saliba, underwent double organ transplant surgery. (Plaintiff's November 17, 2006 affidavit). The Plaintiff submitted his response to Professor Hawthorne's request for information in late January 2003. (*Id.*). The Plaintiff states that he contacted the Registrar's office at the university in late March 2003 about his enrollment for the Spring 2003 semester, and was informed that he would need a signed "add" form from the professor supervising his dissertation. (*Id.*)

The Plaintiff sent an e-mail message to Professor Hawthorne on April 8, 2003, stating: "I still haven't heard from the Dean's office regarding my extension," and asking Professor Hawthorne to

4

advise whether he had "heard anything." (Plaintiff's Exhibit No. 1-A). Professor Hawthorne responded by e-mail as follows: "I'm sorry to tell you that Dean Williams denied your request for another extension. There is probably a letter in your box." Professor Hawthorne attached to his e-mail a copy of Dean Williams' February 28, 2003 letter. The Plaintiff contends that this e-mail from Professor Hawthorne was the first notice he received that Dean Williams had denied his sixth extension.

Generally, a claim accrues, and the limitation period begins to run, when the claimant knows or has reason to know of the existence and cause of his injury. *Industrial Contractors Corp. v. United States Bureau of Reclamation,* 15 F. 3d 1206, 1215 (10th Cir. 2004). A civil rights action accrues when facts that would support a cause of action are, or should be, apparent. *Alexander v. Oklahoma,* 382 F. 3d 1206, 1215 (10th Cir. 2004).

The Plaintiff's evidence, viewed in its most favorable light, is sufficient to raise a factual dispute as to whether the Plaintiff received Dean Williams' February 28, 2003 letter at any time before April 8, 2003. However, the undisputed evidence shows that the Plaintiff had reason to know of, or inquire about, the denial of his sixth extension long before April 8, 2003. Like each of his prior requests, the Plaintiff had made his sixth request for an extension near the end of the fall semester. Each of the Plaintiff's five prior extensions had been granted in December of the same year, or in January of the following year, in time for the Plaintiff to enroll in the spring semester. (Defendants' Exhibits 12 - 16). Dean Williams requested additional information to evaluate his request on December 13, 2002, but the Plaintiff did not respond. (Defendant's Exhibit No. 15). On January 9, 2003 Professor Hawthorne e-mailed the Plaintiff asking for a response to the Dean's request for information. The Plaintiff did not respond to this request until January 29, 2003.

Case 5:05-cv-00396-R    Document 108    Filed 11/21/06    Page 6 of 6


(Defendant's Exhibit No. 14). Moreover, the Plaintiff did not enroll in, or pay tuition for, the required two credit hours for the spring semester of 2003; nor did he inquire about his status again until April 8, 2003. Assuming that the Plaintiff did not receive the February 28, 2003 letter, the sequence of events is nevertheless sufficient to give the Plaintiff "reason to know" at some time prior to April 8, 2003 that his sixth request had been denied, particularly since the letter granting his fifth extension stated that it would be the "final extension granted." (Defendant's Exhibit No. 16). In fact, in a January 20, 2003 letter to Professor Hawthorne, the Plaintiff acknowledged his concern that the University would "make good on its refusal to grant any further extensions." (Defendant's Exhibit No. 5).

The undisputed evidence establishes that the Plaintiff should have known, or had reason to know, of the denial of his request prior to April 8, 2003. Assuming, for purposes of the Defendant's motion, that the Plaintiff did not receive the February 28, 2003 letter, he still had reason to inquire about the status of his request prior to April 8, 2003. Thus, the Court finds that the Defendant is entitled to summary judgment on statute of limitations grounds.

### III. Conclusion.

The Plaintiff's motion for summary judgment is hereby DENIED. The Defendant's motion for summary judgment is hereby GRANTED.[2]

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[2] In view of the Court's finding that the Plaintiff's claims are barred by the statute of limitations, the Court need not address the Defendant's argument that the Plaintiff has not established a prima facie case of discrimination on the basis of disability, or the parties' arguments on the issue of whether money damages are available.

6